**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MARILYN PHILLILPS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 17-CV-547-JED-JFJ** |
| | ) | |
| **FARMERS INSURANCE** | ) | |
| **COMPANY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MOTION TO AMEND JOINT STIPULATION**

The Plaintiff moves the Court for an order amending the Amended Joint Stipulations of Plaintiff and Defendant filed April 4, 2019 [Doc. 54]. Specifically, the Plaintiff does not stipulate that the Court must first subtract $184,165 from the verdict. That stipulation was entered into by the Plaintiff based on an erroneous interpretation of 36 O.S. § 3636.

Since entering into the Stipulation, counsel for Plaintiff has been involved in another case involving this same issue. Having researched the matter thoroughly, counsel for Plaintiff believes Oklahoma law does not allow Farmers to get credit for the $100,000.00 paid by Dianne Rooker's insurance company because Farmers did not substitute its payment for that of Ms. Rooker's insurance company. Plaintiff contends that substitution of payment is a prerequisite for Farmers to reduce the verdict by $100,000.00.

**ARGUMENT AND AUTHORITY**

36 O.S. Section 3636 (F) governs this issue. It provides:

In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person

against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. Provided, however, with respect to payments made by reason of the coverage described in subsection C of this section, the insurer making such payment shall not be entitled to any right of recovery against such tort-feasor in excess of the proceeds recovered from the assets of the insolvent insurer of said tort-feasor. Provided further, that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage. Provided further, that if a tentative agreement to settle for liability limits has been reached with an insured tort-feasor, written notice shall be given by certified mail to the uninsured motorist coverage insurer by its insured. Such written notice shall include:

1. Written documentation of pecuniary losses incurred, including copies of all medical bills; and

2. Written authorization or a court order to obtain reports from all employers and medical providers. Within sixty (60) days of receipt of this written notice, the uninsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage. *__If the uninsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within sixty (60) days, the uninsured motorist coverage insurer has no right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage.__* (Emphasis added).

In this case, Ms. Rooker's carrier tendered policy limits of $100,000.00. Following the language of Section 3636, Plaintiff's counsel notified Farmers of the settlement and put Farmers on notice to either waive subrogation or tender payment of $100,000.00 within 60 days. *Ex. 1, July 17, 2015 letter to Farmers.* Farmers waived its subrogation rights against Dianne Rooker in regard to Ms. Phillips' underinsured motorist claim. *Ex. 2, August 25, 2015 letter from Farmers.*

Under Section 3636 (F) (2), Farmers had two choices (Option A and Option B) after Farmers was notified of the settlement and was provided the required documentation. Under Option A, Farmers could have substituted its payment to the insured for the $100,000.00 settlement amount. Had Farmers substituted payment, Farmers would then "be entitled to the

insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage." Ms. Phillips would not have settled with Ms. Rooker because Ms. Rooker would have paid nothing. The case would have continued against Ms. Rooker and Farmers may or may not have participated in the litigation. On conclusion of the case against Ms. Rooker, Farmers would have been entitled to Ms. Phillips' right of recovery against Ms. Rooker to the extent of the $100,000 payment.

Instead, Farmers chose Option B, and chose not to make a substitute payment under the statute. By choosing Option B, Farmers "has no right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage." That means that Farmers is not entitled to Ms. Phillips' right of recovery against Ms. Rooker and therefore does not get credit for the $100,000 payment. There is no other conclusion that can be reached under the plain language of the statute.

Let's put this in practical terms based on the facts in this case. Assume Farmers chose to substitute payment of the $100,000.00 paid by Ms. Rooker's carrier. Then assume the verdict in the case was $500,000.00. Farmers would be entitled to recover the $100,000.00 from Ms. Rooker's carrier and would be out of pocket only $400,000.00.

Instead Farmers did not substitute payment. Assume again a verdict of $500,000.00. Under Farmers' interpretation of the statute, Farmers would get still credit for the $100,000.00 payment made by Ms. Rooker's carrier even though Farmers did not follow the statute and substitute payment, and would be out of pocket only $400,000.00. Therefore, under Farmers' interpretation of the statute, the UIM carrier gets the same result whether or not it substitutes payment.

This was not what the legislature intended when drafting Section 3636. If the legislature had intended for the same result to occur regardless of whether substitution of payment was made, it would not have set out different consequences for payment versus non-payment. Instead, the legislature sets forth two different outcomes for the uninsured motorist carrier. One allows it to recover the money the UIM carrier pays under Section 3636 while the other does not allow the UIM carrier to recover any of the proceeds of the settlement or judgment.

No doubt Farmers will cry foul and say that under the Plaintiff's interpretation of the statute, the Plaintiff may get a "windfall". Under the Plaintiff's interpretation of the statute, assuming the same facts above, Plaintiff could recover $600,000 on a $500,000 verdict. That is not the case because the verdict is against Farmers only and Farmers will have to pay $500,000, not $600,000.

Extant case law supports Plaintiff's position. In *Barnes v. Oklahoma Farm Bureau Mutual Ins. Co.,* 2000 OK 55, the Plaintiff sued her insurer for underinsured (UIM) motorist benefits and the breach of implied duty of good faith and fair dealing. The Plaintiff was awarded $15,000 in UIM benefits by summary judgment and the jury awarded $10,000 actual and $1.5 million punitive damages. Farm Bureau appealed.

The other driver had $10,000 in liability insurance and offered to pay it. Barnes put Farm Bureau on notice pursuant to Section 3636. Barnes had $15,000 UIM with Farm Bureau. Instead of making a true substitution payment for the tentative settlement, Farm Bureau sent Barnes' lawyer a draft for $10,000 but maintained "said check was both a part of the $15,000 UIM coverage and a proper substitution for the tentative liability limits settlement, which it would be entitled to recover back from any of Donaldson's assets, including his liability policy." 2000 OK 55, ¶ 12. The parties got into a dispute over that, which ended with Barnes suing Farm

Bureau for "bad faith". The trial judge, the jury, the Court of Civil Appeals and the Supreme

Court all agreed Farm Bureau was acting in bad faith.

The Court said:

> Though multiple specific shortcomings were presented to support Barnes' position that insurer breached its duty of good faith and fair dealing (e.g. failure to properly investigate the UIM claim, failure to make swift/prompt payment and failure to pay undisputed amounts), a central focus of her claim was insurer's response to the § 3636(E) notice of a tentative settlement with Donaldson for his liability policy limits sent to both UIM insurers in December 1991. Subsection 3636(E)(2) requires that, within sixty (60) days of the notice's receipt a UIM carrier must either substitute its own payment for the tentative settlement amount - i.e. it must pay its insured the amount of the tentative settlement - or, be deemed to have waived any subrogation rights against the tortfeasor for any amount paid under the UIM coverage. Of course, if the UIM carrier substitutes, the insured would not finally accept the tentative settlement because the UIM carrier would have substituted its payment for that offered by the tortfeasor and his liability carrier. Further, upon proper substitution, in addition to protecting its subrogation rights for any benefits paid under the UIM coverage, § 3636(E)(2) expressly provides that the UIM carrier is also entitled to any ultimate recovery (by settlement or judgment) from the tortfeasor, to the extent of the payment made in substitution of the tentative settlement. Id at ¶ 11.

How does that apply to this case? Had Farmers substituted its payment, Ms. Phillips

would not have accepted the tentative settlement with Ms. Rooker's carrier because Farmers

would have substituted payment. The case would have proceeded against Ms. Rooker. By

making a proper substitution payment, Famers would have protected its subrogation rights for

any benefits paid under the UIM coverage and Farmers would be entitled to any ultimate

recovery by Ms. Phillips from Ms. Rooker to the extent of the $100,000.00 payment. Thus, in

the event of a $500,000 jury verdict against Ms. Rooker, Farmers would recoup $100,000 from

Ms. Rooker's carrier and pay Ms. Phillips the remaining $400,000.00.

Instead, Farmers wants the same limitation on payment without ever having substituted payment. The issue is not whether it is fair for Ms. Phillips to collect the entire verdict from Farmers after having collected $100,000 from Ms. Rooker's carrier. The issue is whether Farmers is entitled to exercise its subrogation rights and in essence recover the money paid by Ms. Rooker's carrier without having substituted payment. Under the plain language of the statute and the case law, Farmers does not get "credit" for the $100,000.00 paid by Ms. Rooker's liability carrier.

Therefore, Plaintiff no longer stipulates that the Court must deduct $100,000 from the jury verdict.

Respectfully Submitted:

By:     s/Anthony M. Laizure
         Anthony M. Laizure, OBA # 5170
         Laizure Law, PLLC
         1616 S. Main Street
         Tulsa, OK 74119
         Phone: (918)749-0749
         Fax: (918)518-7250
         E-mail: TLaizure@LaizureLaw.com
         *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 30th day of May, 2019, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.  Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Robert Taylor
Steidley & Neal, PLLC
CityPlex Towers, 53rd Floor
2448 E. 81st Street
Tulsa, OK  74137
Email: rht@steidley-neal.com
*Attorney for Defendant*

s/Anthony M. Laizure
Anthony M. Laizure