# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| MARILYN ANN PHILLIPS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) | Case No. 17-CV-547-JED-JFJ |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| FARMERS INSURANCE COMPANY, INC., | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

**I.   Background**

The plaintiff, Marilyn Ann Phillips, was injured in a motor vehicle accident on August 27, 2012. The other driver, Dianne Rooker, was found to be at fault. Ms. Rooker carried automobile liability insurance with a policy limit of $100,000, and her insurance carrier tendered an offer to Ms. Phillips for those policy limits. Ms. Phillips carried $1,000,000 in uninsured / underinsured motorist (UM) coverage through policies issued by the defendant, Farmers Insurance Company, Inc. (Farmers).

After receiving the $100,000 offer from Ms. Rooker's liability insurance carrier, Ms. Phillips notified Farmers of the offer. Farmers responded that it would waive its subrogation rights so that Ms. Phillips could receive the $100,000 payment. Ms. Phillips was thus paid that amount by Rooker's liability carrier. Subsequently, after taking sworn statements from Ms. Phillips and one of her treating doctors, Farmers paid Ms. Phillips $84,165.00 in UM benefits. Ms. Phillips then initiated this action in state court by the filing

of a Petition on August 28, 2017. (Doc. 2 at 4). She asserted a contract claim against Farmers and alleged that Farmers had not sufficiently paid UM benefits to compensate for her damages. (*See id.*). Prior to trial, the parties entered numerous stipulations that would significantly impact the presentation of the case to a jury. They stipulated, among other things, to the following:

- "The tortfeasor, Dianne Rooker, had an insurance policy providing liability limits of $100,000, which has been paid to the Plaintiff." (Doc. 54 at 1).

- "The [Farmers policies] provided [a] total of $1,000,000 in UM/UIM coverage. From that coverage, Farmers has paid $84,165 to Ms. Phillips, leaving $915,835 in available [UM] coverage." (*Id.*).

- "[N]o comment or evidence will be introduced at trial in regard to the coverage and policy limits of the tortfeasor's insurance policy and the UM/UIM limits of the polices issued by Farmers." (*Id.*).

- "[T]here will be no comment or evidence introduced in regard to payment to Plaintiff from the tortfeasor's insurance policy and from the UM/UIM coverage and the policies issued by Farmers." (*Id.*).

- "The parties stipulate that to determine the amount of a judgment to be entered in favor of the Plaintiff and against the Defendant, the Court must first subtract $184,165 from the verdict, and must then apply a cap on damages in the amount of $915,835." (*Id.* at 2).

The parties' Amended Stipulations were filed on April 4, 2019, the day before the Pretrial Conference.

On April 5, 2019, following the Pretrial Conference, the Court signed and filed the Pretrial Order, which had been submitted by the parties. In the Pretrial Order, the parties agreed that the issues of fact to be litigated at trial included "[t]he amount of actual damages to fairly and justly compensate Plaintiff . . . for injuries caused by the August 27, 2012

wreck taking into account all elements of damages to which she is entitled under Oklahoma law." (Doc. 56 at 5).

With the jury trial set to commence on June 19, 2019, Ms. Phillips filed a Motion to Amend Joint Stipulation on May 30, 2019. (Doc. 72). She asked the Court to "amend" the parties' amended stipulations based on her assertion that her stipulation to subtract $184,165 from the verdict was "entered into by the Plaintiff based on an erroneous interpretation of [*Okla. Stat.* tit. 36,] § 3636." (*Id.* at 1). Ms. Phillips represented that, since stipulating to the subtraction of the $184,165 from the jury verdict, her counsel had "researched the matter thoroughly" and "believes Oklahoma law does not allow Farmers to get credit for the $100,000 paid by Dianne Rooker's insurance company because Farmers did not substitute its payment for that of Ms. Rooker's insurance company." (*Id.*). Plaintiff thus "contend[ed] that substitution of payment is a prerequisite for Farmers to reduce the verdict by $100,000." (*Id.*).

After considering Ms. Phillips's request to "amend" the parties' amended stipulations, as well as the response filed by Farmers (Doc. 73) and Phillips's reply (Doc. 74), the Court denied Ms. Phillips's request by entering a Minute Order:

> The plaintiff's Motion to Amend Joint Stipulation (Doc. 72) is denied. The plaintiff's argument ignores the purpose and language of the applicable statute and contractual underinsured motorist coverage, which covers damages above the limits of a tortfeasor's insurance coverage. The cases cited by plaintiff are inapposite. In Barnes v. Oklahoma Farm Bur. Mut. Ins. Co., 11 P.3d 162 (Okla. 2000), the issue involved the insurer claiming its own underinsured motorist coverage LIMIT was reduced by the amount of the underinsured tortfeasor's insurance limit, and the insurer's argument was directly contrary to the language of the statute. Weatherly v. Flournoy, 929 P.2d 296 (Okla. Civ. App. 1996) involved a tortfeasor's attempt to receive credit for earlier payments made by the plaintiff's insurer under an uninsured

motorist policy. That is not similar to this case. An insurer's underinsured motorist policy covers the amount of damages that exceed the liability limit of the tortfeasor's insurance and that is what is at issue in this case.

(Doc. 76).

The case proceeded to trial on the issue of the total amount of Ms. Phillips's damages. Consistent with the manner in which the parties had arranged the case for trial, the Court instructed the jury that "[t]he issues you must decide in this case are (1) what injuries to Ms. Phillips were directly caused by the car wreck and (2) what amount of money will reasonably and fairly compensate Ms. Phillips for those injuries." (Doc. 87 at 4 [Jury Instruction No. 3]). In accord with Ms. Phillips's repeated representations that she was "not asking for damages for past medical bills" (Doc. 38; *see also* Doc. 47 at 2; Doc. 55 at 4-5), the jury was instructed that the plaintiff was not seeking expenses for past medical care. (*See* Doc. 87 at 16 [Jury Instruction No. 15]).

The Jury Instruction regarding the measure of damages also did not include future medical expenses, as her counsel volunteered at the jury instruction conference that he had not presented any evidence of future medical expenses and thus the jury instruction should not include such expenses in the categories of damages to be considered by the jury. (*See id.*). The jury was ultimately instructed that it "must fix the amount of plaintiff's damages," which "is the amount of money that will reasonably and fairly compensate [her] for the injury or injuries that were directly caused by the car wreck involved in this case." (*Id.*).

The jury returned a verdict stating: "We, the jury, empaneled and sworn in the above-entitled case, do, upon our oaths, fix the dollar amount of plaintiff's damages in the

4

sum of $237,500.00." (Doc. 88). Following the conclusion of trial, the Court entered Judgment (Doc. 89), stating in relevant part:

> In accordance with the jury's verdict fixing plaintiff's damages in the amount of $237,500.00 (Doc. 88) and the parties' stipulation that "the Court must first subtract $184,165.00 from the verdict" (Doc. 54), final judgment is hereby entered in favor of the plaintiff, Marilyn Ann Phillips, and against Farmers Insurance Company, Inc., in the amount of $53,335.00."

After the entry of Judgment, Ms. Phillips filed a Motion to Alter or Amend Judgment under Fed. R. Civ. P. 59 (Doc. 91). In the motion, Ms. Phillips reasserts the argument she made before trial in which she requested that the Court "amend" the parties' stipulation that the Court would subtract the $100,000 paid by the tortfeasor's liability insurance carrier. (*See id.*). Farmers has responded (Doc. 93), and Ms. Phillips filed a reply brief (Doc. 94).

## II. Discussion

### A. Rule 59(e) Standards

Plaintiff's Motion is filed under Rule 59(e). The purpose of such a motion "is to correct manifest errors of law or to present newly discovered evidence." *Monge v. RG Petro-Machinery (Group) Co.*, 701 F.3d 598, 611 (10th Cir. 2012). "Grounds warranting a motion to alter or amend the judgment pursuant to Rule 59(e) motion 'include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). Such a motion "is appropriate where the court has misapprehended the facts, a party's position, or the controlling law," but "is not

5

appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* (citation omitted).

### B. Subrogation under Section 3636(F)

Plaintiff argues that the Court should amend the Judgment by adding $100,000, the amount she received in settlement from the tortfeasors' liability insurance company. Her argument is based on *Okla. Stat.* tit. 36, § 3636(F), which provides in relevant part:

> F. In the event of payment to any person under the [UM] coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer... Provided ... that any payment made by the insured tort-feasor shall not reduce or be a credit against the total liability limits as provided in the insured's own uninsured motorist coverage.... [I]f a tentative agreement to settle for liability limits has been reached with an insured tort-feasor, written notice shall be given by certified mail to the uninsured motorist coverage insurer by its insured. Such written notice shall include:
>
> 1. Written documentation of pecuniary losses incurred, including copies of all medical bills; and
>
> 2. Written authorization or a court order to obtain reports from all employers and medical providers.
>
> Within sixty (60) days of receipt of this written notice, the uninsured motorist coverage insurer may substitute its payment to the insured for the tentative settlement amount. The uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment and any settlement under the uninsured motorist coverage. If the uninsured motorist coverage insurer fails to pay the insured the amount of the tentative tort settlement within sixty (60) days, the uninsured motorist coverage insurer has no right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage.

*Okla. Stat.* tit. 36, § 3636(F).

6

Ms. Phillips focuses, specifically, on only the last sentence of § 3636(F). She proposes that the Court determine that, because Farmers waived its subrogation rights under § 3636(F) and "has no right to the proceeds of any settlement or judgment . . . for any amount paid under the uninsured motorist coverage," that means that the Court must deduct $100,000 for the payment made by the tortfeasor's liability insurer. (*See* Doc. 91 at 5). To arrive at that conclusion, the plaintiff proposes the Court apply the following reasoning:

> Surely granting Farmers a "set-off" or "credit" against the [$100,000] proceeds [paid by the tortfeasor's liability insurer] is the same thing as granting Farmers a right to the proceeds of the jury verdict because the effect is the same. Farmers' total liability limit is reduced by $100,000.00. Reducing the jury verdict by the $100,000.00 paid to Ms. Phillips by another insurance company in essence restores the subrogation rights Farmers waived and renders meaningless the very last sentence of Section 3636.

(*Id.*). Plaintiff cites no on-point authority, and the Court has not located any, construing the statute in the manner that plaintiff proposes in this case.

The plaintiff's construction of § 3636(F) is based on a strained, isolated reading of one sentence of § 3636 that is not supported by the plain language of the statute, or its intended operation and purpose. The Tenth Circuit has explained the statute, which was previously codified as § 3636(E), as follows:

> The central goal of section 3636 is to protect victims injured by uninsured or underinsured motorists ... by ensuring payment of damages.... One way it accomplishes that goal is by providing the speedy payment mechanism in section 3636(E) that is triggered by the insured giving notice of an impending settlement with the tort-feasor to the UM/UIM carrier. The last part of the section entitles the UM/UIM carrier that has paid a UM/UIM claim *to prevent settlement by making a substitute payment of the tort-feasor's offer of settlement. See Barnes,* 11 P.3d at 168 (noting, "if the UIM carrier substitutes, the insured would not finally accept the tentative

7

settlement because the UIM carrier would have substituted its payment for that offered by the tortfeasor"). *The UM/UIM carrier may then force the tort-feasor to go to trial (or to a higher settlement) and take the insured's right of recovery to the extent of that substitute payment plus any payments already made under the UM/UIM policy. See id.* ("[U]pon proper substitution, in addition to protecting its subrogation rights for any benefits *paid* under the UIM coverage, section 3636(E)(2) expressly provides that the UIM carrier is also entitled to any ultimate recovery . . . from the tortfeasor, to the extent of the payment made in substitution of the tentative settlement.") (emphasis added). Of course, . . . *the only time taking such action would be profitable to the UM/UIM carrier is when the tort-feasor has assets beyond the liability limits (or settlement offer) of his insurance policy that may be collected after judgment*.

> The last sentence of section 3636(E)(2) bars the UM/UIM carrier from making any subrogation claims . . . if it has received written notice of the proposed settlement but has not offered a timely substitute payment to the insured and paid the UM claim as well. *See id.* at 169 (noting that UIM carrier waived its subrogation rights by deciding not to substitute payment and simply paying UIM claim); *Sexton,* 816 P.2d at 1138 (stating that subrogation is a right arising when one has paid the debt of another); section 3636(E)(2) (prefacing preservation of rights provisions with "in the event of payment" and providing for preservation of both substitute payment and UIM claims that have been paid). Oklahoma thus punishes a UM/UIM carrier (that has been given written notice fulfilling the statutory requirements) for refusing to quickly settle.

*Phillips v. New Hampshire Ins. Co.*, 263 F.3d 1215, 1224–25 (10th Cir. 2001) (emphasis added); *see also Barnes*, 11 P.3d at 172-74.

Farmers did not substitute payment by paying Ms. Phillips the $100,000 policy limits that were offered to her by the tortfeasor's insurer. Instead, Farmers timely waived its subrogation rights so that Ms. Phillips could promptly receive payment of the $100,000. Thus, Farmers did not "prevent settlement by making a substitute payment of the tort-feasor's offer of settlement," *see Phillips*, 263 F.3d at 1224–25, but instead facilitated the tortfeasor's prompt settlement payment of the liability limits of her policy. Farmers's

8

decision made perfect sense, given that "the only time [substituting payment and forcing a trial with the tortfeasor] would be profitable to [a] UM/UIM carrier is when the tort-feasor has assets beyond the liability limits (or settlement offer) of his insurance policy that may be collected after judgment." *See id.*

Farmers then assessed plaintiff's total damages at $184,165 (e.g. determining the tortfeasor was underinsured by $84,165), and Farmers paid plaintiff $84,165 as UM policy benefits. Factoring in the Judgment for the additional $53,335 in damages to compensate the plaintiff for the balance of her total damages as found by the jury, the goal of the statute – to "protect victims injured by uninsured or underinsured motorists . . . by ensuring payment of damages" – has been met. *See id.* The plaintiff will be compensated the full amount of her $237,500 in damages, as assessed by the jury.

Under the statute, by not substituting its payment of $100,000 in place of the liability insurer, Farmers waived its "right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage." Okla. Stat. tit. 36, § 3636(F). That sentence "bars [Farmers] from making any subrogation claims." *Phillips*, 263 F.3d at 1224–25. Thus, Farmers waived *its subrogation rights to pursue the tortfeasor* for the $100,000 liability limits (because Farmers did not substitute payment in that amount) *and* the additional $84,165 that Farmers paid on the UM policy. *Okla. Stat. tit. 36, § 3636(F)* ("[Upon substitution of payment], the uninsured motorist coverage insurer shall then be entitled to the insured's right of recovery to the extent of such payment *and any settlement under the uninsured motorist coverage.*"); *see Phillips*, 263 F.3d at 1224-25; *Barnes*, 11 P.3d at 173; *see also generally Black's Law Dictionary* (11th ed.

2019) (Subrogation: "The principle under which an insurer *that has paid a loss* under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy."); *Okla. Stat.* tit. 36, § 3636(F) (prefacing preservation of rights provisions with "in the event of payment" and providing for preservation of both substitute payment and UIM claims that have been paid by the UM insurer); 16 *Couch on Insurance* (3d ed. June 2019 update) § 222:5; *Hanover Ins. Co. v. Honeywell, Inc.*, 200 F. Supp. 2d 1305, 1309-10 (N.D. Okla. 2002). Farmers's waiver of that subrogation right under § 3636(F) does not obligate it to pay the insured portion ($100,000) of Ms. Phillips's damages that was already paid by the tortfeasor's insurer.

The plaintiff attempts to construe the language of the last sentence of § 3636(F) – "the uninsured motorist coverage insurer has no right to the proceeds of any settlement or judgment, as provided herein, for any amount paid under the uninsured motorist coverage" – as referring to the judgment *in this case*, as opposed to the settlement with the tortfeasor, which she was already paid. (*See* Doc. 91 at 5). That construction is contrary to the language of § 3636(F), which makes clear that the language of the last sentence – "proceeds of any settlement or judgment, *as provided herein*" – refers back to the "proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of [the UM insured] against any person or organization legally responsible for the bodily injury for which such payment is made," as set forth in the first sentence of § 3636(F). *Compare* § 3636(F) (last sentence) *to id.* (first sentence); *see also Phillips*, 263 F.3d at 1224-25; *Barnes*, 11 P.3d at 173-74. In other words, "settlement or judgment, as provided herein" refers to any settlement or judgment *with the tortfeasor*.

10

Plaintiff's attempt to carve out a different meaning for a few words in one sentence of the statute is precisely what the Oklahoma Supreme Court has said is not permissible. *Barnes*, 11 P.3d at 173 ("To understand § 3636(E) [now § 3636(F)], one cannot merely take out of context one sentence or part of a sentence, but the provision must be read in its entirety, including the other portions of [that section]."). There is simply no reasonable or logical construction of the statute that would require Farmers to pay Ms. Phillips an additional $100,000 in damages for which she has already been compensated simply because Farmers waived its right to subrogation. That is what the plaintiff is asking the Court to do, but she has provided no authority that would support her request. Contrary to the plaintiff's argument, deducting from the plaintiff's total damages the $100,000 she has already been compensated is *not* "the same thing as granting Farmers a right to the proceeds of the jury verdict." (*See* Plaintiff's Motion, Doc. 91 at 5). That is because the plaintiff has *already received the first $100,000* in damages, Farmers also paid her $84,165 in UM benefits, and the Court has ordered that Farmers also pay $53,335 to make up the rest of the plaintiff's total damages that the jury found had resulted from the accident.

Ms. Phillip's suggestion that the $100,000 deduction is like giving it to Farmers is plainly wrong. The jury decided the "amount of money [that would] reasonably and fairly compensate Ms. Phillips for" her injuries that "were directly caused by the car wreck," and fixed those damages at $237,500. (Doc. 87 at 4; Doc. 88). That is the amount that plaintiff will be compensated under the terms of the Judgment as it was entered after trial. To order Farmers to pay an additional $100,000 would simply award plaintiff *an additional* $100,000 in damages and require that Farmers compensate her for damages that the

tortfeasor's insurance covered. That result would be directly contrary to the language of § 3636 and the purpose of UM coverage – to compensate for damages *not covered* by the tortfeasor's insurance limits. Here, the tortfeasor's insurer *did cover* $100,000 of the plaintiff's damages, and there is no legal basis to require Farmers to duplicate payment for those insured damages.

If Farmers had substituted payment, it would have paid the $100,000 to plaintiff, instead of the tortfeasor's insurer paying that $100,000. Farmers would also be required to pay $137,500 for plaintiff's damages – the amount that the tortfeasor's insurance was insufficient to pay. Farmers would then have had the right to force the tortfeasor to trial or to make a larger settlement offer than the $100,000 originally offered, and Farmers could have recovered up to the full amount that it paid the plaintiff, both in its substitution payment and in UM benefits. *Okla. Stat.* tit. 36, § 3636(F); *see Phillips*, 263 F.3d at 1224-25. Because it did not substitute payment, Farmers alone is responsible for the underinsured portion of the plaintiff's damages – $137,500 – and may not recoup that payment from the tortfeasor in subrogation, and it may of course not recoup from the tortfeasor $100,000 (which Farmers did not pay in any event). Ms. Phillips has provided no authority that would support her theory that the statute is designed to permit the plaintiff to recover *double the amount of the tortfeasor's policy limits* – first from the tortfeasor's insurer and then again from the plaintiff's UM insurer. The statute does not require the UM carrier to duplicate a payment already made by a liability insurer.

The statute is intended to promote payment to an injured insured for the damages caused by an uninsured / underinsured tortfeasor, which is accomplished in this case by the

tortfeasor's liability insurance policy limits paid to plaintiff, the additional amount paid pre-suit by Farmers to plaintiff under the UM policy, and the Judgment. Yet, plaintiff argues that failing to add $100,000 to the Judgment "would render the final sentence of [§ 3636(F)] meaningless because the result for the UIM carrier that substitutes payment is exactly the same result for the UIM carrier that does not substitute payment." (Doc. 91 at 5). Plaintiff's argument is demonstrably wrong. Utilizing the amounts at issue in this case – total damages of $237,500; $100,000 tortfeasor liability limits; $84,165 paid by Farmers before suit; and the $53,335 Judgment to compensate for the balance of plaintiffs' damages – the following chart shows the effects of the statute under the two different scenarios contemplated by § 3636(F):

|  | **If UM Insurer Substitutes Payment** | **If UM Insurer Does Not Substitute Payment** |
|---|---|---|
| **Liability Limits Paid to Plaintiff by Tortfeasor's Insurer** | $0 | $100,000 |
| **Paid by UM Insurer** | $100,000 + $84,165 + $53,335 = $237,500 | $84,165 + $53,335 = $137,500 |
| **UM Insurer's Right to Subrogation** | Right to recover up to full $237,500 UM carrier paid | No right of subrogation to recover $137,500 paid by UM carrier |
| **Total Paid to Plaintiff for Her Damages** | $237,500 | $237,500 |

See *Phillips*, 263 F.3d at 1224-25; *Okla. Stat.* tit. 36, § 3636(F).

Thus, the differences under the two scenarios are: (1) whether the plaintiff receives the tortfeasor's $100,000 liability limits from the tortfeasor's insurer or from the UM insurer; and (2) whether the UM insurer has a right of subrogation to collect any substitute

13

payment and UM amounts it paid to its insured. Plaintiff's argument that deducting from the Judgment the $100,000 liability limit paid to the plaintiff "in essence restores the subrogation rights Farmers waived" (Doc. 91 at 5) is also wrong, given that Farmers waived its right to subrogation from the tortfeasor for the total ($137,500) Farmers will pay plaintiff on the UM coverage. Likewise, plaintiff's suggestion that not awarding her another $100,000 somehow takes $100,000 away from her settlement with the tortfeasor's insurer is inaccurate, as she received full compensation for her damages as presented to the jury at trial.

### C. The Jury Considered Plaintiff's Damages

Ms. Phillips further argues that the Court should add $100,000 to the judgment because "[t]he jury did not determine the total maximum loss sustained by Ms. Phillips," given that "the Court instructed the jury it could not consider the expense of past medical care and treatment" and "the jury [did not] consider the amount of future medical expenses or loss of earnings." (Doc. 91 at 6). That is a new argument, and it is a misrepresentation of the way in which this case was tried, largely by plaintiff's own design.[1]

While Ms. Phillips now suggests there is error and the Court must add $100,000 to the Judgment because the jury was not asked to determine past and future medical expenses, the plaintiff *expressly and knowingly did not seek a jury determination of past or future medical expenses in this case*. For example, over a year before trial, plaintiff filed

---

[1] In her Reply Brief, plaintiff indicates that she "withdraws" her double recovery argument. (Doc. 94 at 2-3). However, as she indicates she is not "confessing" the issue, and to address the issue in the event the plaintiff attempts to restate it on appeal, this Order will address that argument as raised in plaintiff's motion.

14

a motion in limine to exclude medical bills, arguing that they were inadmissible because "*Ms. Phillips has elected not to pursue damages for her past medical expenses*." (Doc. 32 at 4; *see also id.* at 6 ["*Ms. Phillips is not going to ask the jury to include compensation for her past medical bills in the jury verdict*."]) (emphasis added). In response to Farmers's motion in limine, plaintiff again reiterated that she "is not asking for damages for past medical bills." (Doc. 38 at 1). The Court relied on plaintiff's representations when it ruled on the parties' motions in limine. (*See* Doc. 47 at 1-3). Consistent with her prior representations, the plaintiff's proposed jury instructions, submitted before trial, did not include past medical expenses as an element of damages. (Doc. 60 at 8).

In the Pretrial Order, which the parties prepared and submitted to the Court, the parties expressly agreed that the issues of fact to be litigated at trial included "[t]he amount of actual damages to fairly and justly compensate Plaintiff . . . for injuries caused by the August 27, 2012 wreck *taking into account all elements of damages to which she is entitled under Oklahoma law*." (Doc. 56 at 5) (emphasis added).

The issues of fact to be tried further included "[w]hether Ms. Phillips will require future medical treatment for injuries caused by the August 27, 2012 wreck." (*Id.*)." However, during the jury instruction conference, plaintiff's counsel expressly requested that the element of future medical expenses be removed from the Court's draft jury instructions, based upon the fact that plaintiff had not offered any evidence of the amount of such expenses. The final Jury Instructions accordingly did not include that element in the Measure of Damages Instruction given to the jury (*see* Doc. 87 at 16 [Jury Instruction No. 15]). The plaintiff did not lodge any objection to that instruction, which also instructed

the jury that it "must fix the amount of plaintiff's damages," which "is the amount of money that will reasonably and fairly compensate [her] for the injury or injuries that were directly caused by the car wreck involved in this case." (*Id.*).

The Court also instructed the jury that it "must decide . . . (1) what injuries to Ms. Phillips were directly caused by the car wreck and (2) what amount of money will reasonably and fairly compensate Ms. Phillips for those injuries." (*Id.* at 4 [Instruction No. 3]; *see also id.* at 20 [Instruction No. 19: "The Verdict Form requires that you decide and record the amount of the plaintiff's damages that you find were directly caused by the August 27, 2012 car accident."]). The plaintiff's belated argument that the trial did not include all elements of damage to which plaintiff is entitled is meritless. Plaintiff voluntarily determined that she was not seeking past medical expenses, over a year prior to the trial, then did not present evidence supporting future medical expenses, and her counsel requested that the jury instructions not include future medical expenses. Any failure to present those issues to the jury was the election of Ms. Phillips and her counsel, not the Court or Farmers, and plaintiff does not get a "do-over" or an extra $100,000 for any elements of damages she elected not to present to the jury at trial.

      D.      **Plaintiff's Attempt to Withdraw from her Stipulation**

The Court's rejection of plaintiff's request that the Court "amend" her stipulation to the subtraction of $100,000 from the verdict was based upon the language, purpose, and meaning of § 3636. However, the Court also notes that plaintiff's request to withdraw from the stipulation was late in the case, as well as legally unjustified. As noted, Ms. Phillips did not attempt to withdraw from the stipulation until after: (1) the parties had filed

amended stipulations; (2) the parties had submitted, and the Court had filed, the Pretrial Order; (3) the Court had conducted the Pretrial Conference; (4) the parties' proposed jury instructions were submitted; and (5) just two weeks remained before the jury trial to conclude the case. Plaintiff styled her motion as one asking the Court to judicially "amend" the parties' stipulation. (Doc. 72). Yet, she did not provide any authority that would permit the Court to either force an amended stipulation on Farmers or to permit plaintiff to withdraw from one of the numerous stipulations the parties had entered in an effort to package the case for the jury at trial. (*See id.*).

"Stipulations are generally considered judicial admissions." *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1116 (10th Cir. 2005) (quoting *Vallejos v. C.E. Glass Co.*, 583 F.2d 507, 510 (10th Cir. 1978)). They are accordingly "routinely accepted as they increase efficiency in the judicial process." *Id.* As a result, the courts are "reluctant to relieve parties from the benefits, or detriments of their stipulations." *Id.* (quoting *Stafford v. Crane*, 382 F.3d 1175, 1180 (10th Cir. 2004)). A "district court is vested with broad discretion in deciding whether to enforce a parties' stipulation or not." *Id.* (citation omitted). These rules further support the Court's pretrial denial of plaintiff's late request to withdraw from her stipulation, as well as this ruling on her post-trial motion.

**III. Conclusion**

For the foregoing reasons, the plaintiff's Motion to Alter or Amend Judgment (Doc. 91) is **denied**.

SO ORDERED this 23rd day of July, 2019.

JOHN E. DOWDELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT

17